ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO.     1:09CR505 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge John R. Adams |
| DINESH BAFNA, ) | |
| ) | SENTENCING  MEMORANDUM |
| Defendant. ) | AND ORDER |
| ) | |

## I.  Introduction

On November 20, 2009, Defendant Dinesh Bafna was charged through an information with one count of conspiracy to violate the Hobbs Act in violation of 18 U.S.C. § 1951.  On December 8, 2009, Bafna appeared before the Court and entered a guilty plea to the charge in the information.  On December 15, 2010, the Court sentenced Bafna to 6 months in prison.  This memorandum will serve to supplement the Court's oral pronouncement of sentence.

Additionally, on December 23, 2010, Bafna moved under Fed. R. Crim. P. 35(a) to correct his sentence.  On December 27, 2010, Bafna filed a supplemental motion to correct his sentence. On December 29, 2010, the Government opposed the motions.[1]  For the reasons stated herein, those motions are DENIED.

## II. Sentencing Process

Criminal sentencing is often described as a three-step process.  A district court must begin

---

1 The Court is aware that the Government's counsel filed the opposition while out on leave in order to facilitate a timely review by the Court.  The Court is appreciative of the Government's efforts to give a full view of the pending motions.

the process by calculating the advisory guideline range suggested by the United States Sentencing Commission. *Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge… will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, the Court must determine the offense level for the crimes for which the defendant has been convicted and the defendant's criminal history. *See United States v. Boyd*, No. 3:07-CR-3, 2008 WL 4963198, at *14-16 (E.D.Tenn. Nov. 18, 2008).

Next, the Court must determine whether a variance or departure from the advisory guideline range would be appropriate. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant.  A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply.   In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D.Ohio 2008) (citations and quotations omitted).

### III.  Advisory Guideline Calculations

The parties raised no objections to the Court's calculation of Bafna's advisory guideline range.  Accordingly, the Court will not reiterate that calculation herein.  Bafna's advisory guideline range was an offense level 18, Criminal History Category I, prior to any adjustments. The Court then allowed a three-level reduction for Bafna's acceptance of responsibility, a

four-level downward departure for substantial assistance, and a two-level downward variance. As a result, Bafna's final offense level was 9, resulting in an advisory guideline range of 4 to 10 months.

## IV. Kinds of Sentences Available

The final calculated advisory guideline range of imprisonment is 4 to 10 months. The statutory maximum for the sole count in the information is 20 years. The maximum fine for the offense is $250,000, and supervised release of three years may be imposed.

## V. Departure

Pursuant to the Government's request, the Court departed downward four levels for Bafna's substantial assistance. The Government adequately explained Bafna's cooperation, and the Court accepted the value of the cooperation without further inquiry.

## VI. Variance and § 3553(a) Factors

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its judgment to determine an appropriate sentence and must offer a reasoned explanation for the sentence. In reaching the sentence herein, the Court considered the nature and circumstances of the offense and the history and characteristics of the defendant. The Court also reviewed the need for the sentence imposed: a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the Defendant; and c) to provide the Defendant with needed educational or vocational training, medical care, and/or other correctional treatment in the most effective manner.

During the sentencing hearing, the Court detailed its analysis of each of the § 3553(a)

factors.  The Court intends this memorandum to supplement its oral findings.

Initially, the Court notes that it permitted a two-level downward variance from the properly calculated offense level of 11.  At an offense level 11, Bafna's advisory range would have been 8 to 14 months.  However, as both the Government and Bafna erroneously calculated his offense level along with numerous others in similar, but unrelated corruption cases, the Court allowed the downward variance to comport with the parties' plea agreement.

Despite the fact that this Court allowed that variance and then sentenced Bafna below the mid-point of his advisory guideline range, Bafna contends that this Court committed "clear error" in his sentencing.

Fed. R. Crim. P. 35(a) provides that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  The authority to correct a sentence under Fed. R. Crim. P. 35(a) is "extremely limited."  *United States v. Houston*, 529 F.3d 743.

> As the Rule 35 Advisory Committee Note makes clear, the rule "is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or ... simply to change its mind about the appropriateness of the sentence ... [or] to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines." *See also United States v. Galvan-Perez*, 291 F.3d 401, 406-07 (6th Cir. 2002) (noting that a sentencing judge may not use Rule 35(a) to alter a discretionary decision merely because he later had a "change of heart"). Unless an error is an "obvious error or mistake" that would have resulted in a remand by the appellate court, it is outside of Rule 35(a)'s narrow purview. *United States v. Arroyo*, 434 F.3d 835, 838 (6th Cir. 2006).

*Id.*

Bafna first contends that this Court committed clear error when it rejected an essential element of the parties' plea agreement during sentencing.  Bafna is simply wrong.

4

Within his plea agreement, Bafna stipulated to certain facts "which satisfy all of the elements of the offense" in the information. Doc. 5 at 4. More specifically at issue herein, Bafna admitted as follows:

> Defendant deliberately ignored a high probability that PO2 caused Defendant's property values to be lowered in exchange for Mont Granite providing free material to Salva Stone for PO2's residence. In so doing, Defendant deliberately closed his eyes to what should have been obvious.

Doc. 5 at 20. Bafna's first argument lacks merit because he mistakenly believes that the Court was somehow bound by the parties' factual stipulation. The parties' plea agreement "stipulations are normally not binding on a district court[.]" *United States v. Rivera-Rodriguez*, 489 F.3d 48, 59 (1st Cir. 2007) (cited approvingly by *United States v. Ashiq*, 307 Fed. Appx. 913, 917 (6th Cir. 2009)). Furthermore, "statements in the U.S. Sentencing Guidelines make it clear that the Guidelines do not envision sentencing courts being bound by factual stipulations in a plea agreement." *United States v. Davidson*, 409 F.3d 304, 311 (6th Cir. 2005) (citations omitted). Nothing in Bafna's plea agreement served to bind this Court to the parties' factual stipulations.

In addition, the Court accepted Bafna's plea agreement because those factual stipulations were sufficient to demonstrate each and every element of the offense in the information. That acceptance, however, did not bind the Court to the parties' stipulations, and Bafna has produced no law to suggest that the Court was indeed bound.

Furthermore, Bafna's contention that this stipulation was not only a term of the plea agreement, but a *material* term of the agreement, is also misleading. The stipulation was an agreement by the Government and Bafna. It was not a term of the agreement at all, let alone a material term. It was located in an attachment to the plea agreement that provided the underlying

factual basis to support that all of the essential elements could be proven. Accordingly, the Court rejects Bafna's argument that it committed clear error when it declined to be bound by the parties' stipulation with respect to Bafna's intent.

To the extent that Bafna's motion could be construed to argue that this Court lacked a reason not to adopt the parties' stipulation, such an argument also lacks merit. The Court's review and analysis of the underlying facts regarding Bafna's intent will also serve to resolve the second and final issue raised in Bafna's supplemental motion to correct his sentence. Within that motion, Bafna contends that this Court improperly considered his socio-economic status in handing out his sentence. While the Court addressed Bafna's financial status, as will be explained below, it did not do so as factor in determining the appropriate sentence.

First, Bafna contends that this Court erred when it noted that Bafna had sufficient means to hire an attorney to file a complaint regarding his property valuation. However, it was not Bafna's *ability* to retain counsel that the Court sought to highlight, but rather the fact that he had indeed *hired* counsel. With the assistance of counsel, Bafna began the formal process of challenging the value of his business on March 25, 2005. With that complaint pending, Bafna agreed to provide free granite to John Valentin with knowledge that the granite would ultimately be installed at Frank Russo's property. That formal process moved forward and a hearing was scheduled for October 25, 2005. During that same month, Bafna called the auditor directly, allegedly to determine how to maximize his chances of success. Bafna was told by Russo to drop his complaint. Bafna then withdrew his complaint on October 19, 2005. On November 15, 2005 and continuing through December 7, 2005, notices were sent out lowering the value of the business. When asked about his conduct in this regard, Bafna indicated that he believed that

Russo had the authority to conduct business in this manner. However, as noted above, Bafna had hired counsel to walk him through the process. There is nothing to suggest that Bafna contacted that counsel before withdrawing the complaint, nor is there anything to suggest that Bafna was counseled that the process he had employed was appropriate. Accordingly, the fact that Bafna had counsel and clearly chose not to involve them in the process once he contacted Russo lends credence to the Court's finding that Bafna was more than deliberately ignorant to the possibility that Russo construed the granite as a bribe. Instead, it demonstrates to the Court that Bafna knew the wrongfulness of his conduct. If not, logic would dictate that Bafna would have approached his counsel about withdrawing his complaint, and any competent counsel would have advised him that his proposed path was not appropriate.

Bafna then continued down that same path with respect to his personal real property. In June of 2006, the value of his residence was increased. During that same summer, Bafna supplied more granite for installation at Russo's residence. Then, in August of 2006, Bafna submitted a complaint about the value of his residence. Roughly 40 days later, Bafna was notified that the value of his home had been decreased. Not satisfied with the size of the decrease, Bafna called Russo seeking further review in February of 2007. Russo requested estimates of the value of the property. Bafna replied that he believed the property was worth between $863,300 and $1,020,800. In March of 2007, the value of the residence was reduced to $865,000.

What is most telling from the above facts is that Bafna twice engaged in the same illegal conduct. With a valuation complaint pending on his business, Bafna provide free granite to Russo, then deviated from the normal process for challenging value, and received a substantial deduction. Seeking to reduce the value of his home, Bafna provided free granite to Russo, then

7

filed a complaint, then deviated from the normal process for challenging value, and received a substantial reduction.  The fact that Bafna engaged in the same conduct on more than one occasion evidences a much stronger intent that deliberate ignorance.

Bafna's claim -- that he was simply ignorant regarding whether or not Russo had the authority to reduce the values in the manner that he did -- stands in stark contrast to the other representations made by Bafna.  During sentencing, Bafna presented substantial evidence to demonstrate that he was a very successful businessman.   He had built up multiple businesses from the ground that were all running successfully.  When he desired to challenge the value of Mont Granite, he employed what was no doubt competent counsel and began the formal, legal process.  The Court simply cannot believe that an articulate, intelligent businessman then withdrew his formal complaint *with a hearing already scheduled* because he believed, based upon a solitary phone call, that the auditor could informally handle it.   Instead, the facts demonstrate that Bafna knew exactly what benefit he would be receiving when he provided free granite to Russo.

Finally, the Court notes that it was not by any means solely the term "deliberate ignorance" that the Court took issue with during sentencing.   Well beyond the factual stipulations in the plea agreement, Bafna sought to minimize his culpability.  During the sentencing hearing, Bafna referred to his conduct as "my indiscretion," "using an improper process," and a "poor decision."  In his presentence interview, he noted that "I used the wrong process to obtain the right result."  Bafna justifies this conclusion by asserting that his properties were valued correctly after the adjustments.  In so doing, Bafna ignores or attempts to negate the wrongfulness of his conduct.  Never once has Bafna admitted that he knew the free granite was impacting Russo's decisionmaking.  The facts as detailed above, however, lead to that inescapable conclusion.

There is simply no possibility that Bafna was unaware that the granite was being treated as a bribe by Russo. His attempts to evade using the term bribe are particularly problematic to the Court.

Bafna's inability to fully accept responsibility for his actions did not cause the Court to reject the Government's request to grant him the full three-level decrease for acceptance. Accordingly, despite his parsing of words, this Court gave him that benefit in calculating his guideline range. However, that same reluctance is what generated the Court's discussion regarding defendants in the Maple Heights City School District corruption probe.

> None of this comports with the defendant's true duty to step up and say, "I did something wrong. I did something illegal. This was wrong."
>
> And that places the defendant, if I were to compare him with others that I sentenced in this case, if I were to compare him with the three yesterday, that in and of itself places him in a different circumstance than the three gentlemen yesterday who came in here of minimal means, minimal means, and *truthfully came forward and said, "We did something wrong. We violated the law and we're here to accept the consequences," as opposed to parsing words and indiscretion and other adjectives I've heard here today*, things that are set forth in the PSI, that does not comport with the defendant who truly understands the wrongfulness of his conduct and it does not send the appropriate message to the public at large.

Doc. 36 at 38-39 (emphasis added). The above quote immediately followed the Court's discussion of Bafna's own language choice in describing his conduct. The Court's statements were clearly intended to contrast Bafna's statements from the forthright statements of defendants that committed somewhat similar acts. While the Court mentioned the means of those defendants, that fact again merely reflects that the other three individuals were not like Bafna. They had not engaged counsel, started a legal process, and then made a conscious decision to engage in illegal conduct. Instead, they engaged in illegal conduct and readily admitted to the Court the wrongfulness of their conduct. Despite Bafna's attempt to take the Court's statements

9

out of context, Bafna's socio-economic status played no role whatsoever in the Court's ultimate sentence.

The Court also notes that Bafna himself interjected finances into sentencing. In seeking a sentence of home confinement, Bafna contended that his business could suffer and possibly fail without him. As such, to address that argument, the Court was required to examine the finances of that business. To that extent, the Court examined those numbers and found no support for Bafna's self-serving statement that the business would fail without him present.

The Court reviewed fully the § 3553(a) factors during its oral pronouncement of sentence. That analysis is likewise incorporated herein. The Government aptly summarized during sentencing that Bafna "fueled the greed of these public officials by giving them what they asked for, by giving them bribes in return for something that he sought." Bafna's conduct, coupled with his refusal to fully acknowledge his own culpability, compel a conclusion that a term of imprisonment is necessary in this matter.

## VII. Sentencing Disparities

The Court has identified no sentencing disparities for similarly situated defendants. In this regard, Bafna has argued at length that he should receive the same benefit as defendants that were at an offense level 9 and sentenced by this Court in 1:10CR235. However, as detailed above, those defendants more fully admitted their own wrongdoing. In and of itself, that fact differentiates those defendants. However, Bafna also ignores that the other defendants were involved in a corruption probe that focused upon the Maple Heights City Schools. In contrast, Bafna was involved in bribing one of the main targets of a probe that it encompassed the government of Cuyahoga County. In fact, the recipient of that bribe has received 22 years in

prison for his conduct.  As such, the two separate corruption probes cannot be compared side-by-side.  Furthermore, the other defendants at offense level 9 were charged with different crimes than that contained in Bafna's information.  Accordingly, while similar in some minor respects, the conduct at issue is not similar enough in any manner to mandate similar sentences.

**VIII.  Conclusion**

Based upon the above reasoning, pursuant to the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553, it is the judgment of the Court that the Defendant Dinesh Bafna is hereby committed to the Bureau of Prisons for a term of 6 months on the sole count in the information. The Court stated the remaining terms of Bafna's sentence on the record and in its journal entry of conviction.  Accordingly, it declines to reiterate those terms herein.

The motions to correct sentence are hereby DENIED.  It is clear from the filings made by Bafna that he seeks to challenge the substantive and procedural reasonableness of his sentence. As this Court sentenced him within the advisory guideline range contemplated by the parties, the plea agreement precludes appellate review of his sentence.  As such, Bafna has attempted to use his Rule 35(a) motion as a substitute for an appeal.  Regardless of the propriety of filing the motion, for the reasons detailed above, the motion has no merit.

IT IS SO ORDERED.

 December 30, 2010                              /s/John R. Adams
Date                                            JOHN R. ADAMS
                                                UNITED STATES DISTRICT JUDGE